UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOYD EDWARDS,

    Plaintiff,

vs.

UAW NATIONAL FORD
DEPARTMENT, et al.,

    Defendants.
_____/

Civil Action No.
06-CV-13441-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING
## DEFENDANT UAW'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 15);
## GRANTING DEFENDANT PUBLIC REVIEW BOARD'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 16)
## and
## REFERRING THE MATTER OF SANCTIONS TO THE MAGISTRATE JUDGE

This matter is presently before the Court on Defendants' Motions for Summary Judgment and Motions for Sanctions.[1] Floyd Edwards ("Plaintiff") has filed a Response to each Defendant's Motion for Summary Judgment. Defendant UAW has filed a Reply. The Court has had the opportunity to review the Motions, Responses, and Reply, as well as all other relevant documents in this case. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court will decide the motion without oral argument. The Court will grant summary judgment and refer the matter of sanctions to the Magistrate Judge.

---

[1] Defendants are the UAW National Ford Department (The United Automobile, Aerospace and Agricultural Implement Workers of America)—"Defendant UAW"—and the Public Review Board—"Defendant PRB."

I.      **HISTORY OF THE CASE**

   A.      **FACTUAL BACKGROUND**

On almost all occasions, the Court constructs a case's factual history based on the parties' briefs and evidentiary exhibits.  However, in this case, Plaintiff has utterly failed to present his version of the facts.  In fact, Plaintiff has merely provided the Court with baseless and unsupported allegations.  After having thoroughly reviewed the pleadings, Motions, and exhibits, the Court will accept the facts as presented by Defendants:

> **1. Transfer and training.**  Edwards transferred from his Department 38 job-setter position to a Department 39 job-setter position on October 29, 2001 when the company downsized Department 38.  Edwards' work changed from making bearing race cups in Department 38 to making spider u-joints in Department 39.  When he first transferred, Edwards was placed on the night shift and paired with another job-setter to facilitate Edwards' training in his new assignment. (Ex. 3 at 2; Ex. 4 at 14-16, 18-20, 23-24, 26-28, 83-84; Ex. 5 at 1-2; and Ex. 8.)
>
> Job-setter training usually requires "no more than 2-3 weeks." (Ex. 19 at 2.)  Typically, the company allows an employee up to 60 days to become proficient. (Ex. 22 ¶ 4.)  After Edwards had been in the new assignment for approximately four months, the company determined that Edwards had not developed the knowledge and proficiency necessary to do his job without assistance.  The company transferred Edwards to the day shift to work with knowledgeable job-setters in an effort to bring his performance to an adequate level.  After Edwards worked and trained for several months on the day shift, the company tested his ability to perform the job-setter work. (Ex. 3 at 3-5; Ex. 5 at 2; and Ex. 8.)
>
> **2. Testing and disqualification.**  Edwards failed the tests.  During a June 5, 2002 UAW evaluation, Edwards was "stopped three separate times"—"once for not following the proper sequence, once for safety . . . and once again for creating an improper move"—and "was not able to successfully complete the task." (Ex. 16; Ex. 3 at 5.)  During a June 11, 2002 test by management, monitored by the union, Edwards was asked to change grinding wheels and set up machinery for production.  Edwards needed assistance and took one hour and 25 minutes to

complete a task which on the "high side" should have taken one hour without assistance. (Ex. 17; Ex. 3 at 5.)  During a July 23, 2002 test by management of Edwards' ability to change the dimensions of an end grinder, monitored by the union, Edwards chipped two grinding wheels and another job-setter had to finish the assigned task. (Ex. 18; Ex. 3 at 5-6.)

Based on Edwards' "inability to perform the job without significant assistance," the company disqualified him as a job-setter on July 30, 2002.  Edwards transferred to a position as Department 249 cleaner. (Ex. 3 at 4-6; Ex. 5 at 2; Ex. 6 ¶ 3; and Ex. 8.)  As a cleaner, Edwards earned $22.61 per hour, 62¢ an hour less than the rate he earned as a job-setter. (Ex. 3 at 6.)  Department 39 was "eliminated a few months after Edwards was disqualified." (Ex. 5 at 3; Ex. 6 ¶ 3.)

**3. The grievance.**  UAW Local 228 filed a grievance on August 1, 2002 challenging the disqualification, requesting Edwards' restoration to the job-setter assignment, a "make whole" remedy, and that Edwards "continue his training." (Ex. 7.)  The company denied the grievance, responding that the company complied with its contract obligations and did more, giving Edwards seven months of training time—which was "unusually lengthy"—and accommodating Edwards with training plans, assistance from proficient job-setters, and transfer to the day shift (at the night shift premium rate) to facilitate his training.  Despite this, the company responded, Edwards was unable to demonstrate the required proficiency and could not perform the job without "significant assistance." (Ex. 8.)

**4. Edwards' first unsuccessful lawsuit.**  Edwards sued Ford and Visteon in Wayne County Circuit Court on October 29, 2002.  Edwards, et al. v. The Ford Motor Co., et al., Wayne County Circuit Court, 02-238370-CL ("Edwards I").  Edwards made claims of race and age discrimination under Michigan's Elliott-Larsen Civil Rights Act, asserting that he was improperly disqualified as a job-setter. (Ex. 3 at 6; Ex. 4 at 71-74.)  After discovery, briefing, and oral argument, Judge William J. Giovan dismissed Edwards' suit, ruling for Visteon and Ford under MCR 2.116(C)(10), which provides for summary disposition where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." (Def. UAW's Mot., Ex. 9; Ex. 3 at 7.)  Judge Giovan found that Edwards' proofs did not "suffice to make out a prima facie case of age or race discrimination." (Ex. 20 at 11.)  Edwards did not appeal. (Ex. 3 at 7.)

**5. Edwards' unsuccessful unfair labor practice charge.**
Edwards filed an unfair labor practice charge at the National Labor Relations Board on August 26, 2003. He charged: "The union [won't] take the gri[e]vance to get my job back." (Ex. 11.) NLRB Region 7 dismissed Edwards' charge on October 24, 2003, finding "insufficient evidence." (Ex. 12.) Edwards appealed to the NLRB in Washington, D.C. The NLRB denied his appeal on February 5, 2004. (Ex. 13.)

**6. Edwards' unsuccessful civil rights charges.** Edwards filed a charge with the Michigan Department of Civil Rights ("MDCR") complaining that his "demotion" was due to "unequal treatment" based on age. He withdrew the charge when he sued Visteon and Ford in state court. Despite Judge Giovan's 2003 decision in Edwards I, Edwards filed another MDCR charge on April 25, 2005. The later charge "was dismissed by the [MDCR] because the matter had been resolved in court." Edwards requested reconsideration. MDCR denied reconsideration, reporting that Edwards stated "he continues to be negatively impacted from his demotion in 2002" but "understands that the issue was addressed by the court in 2003 and that there is no longer any recourse for him." (Ex. 21.)

**7. Withdrawal of the grievance.** UAW prosecuted the grievance through the pre-arbitration steps of the procedure. UAW International Representative Chuck Browning then made the judgment that the grievance lacked sufficient merit to warrant arbitration. (Ex. 6 ¶ 4; Ex. 22 ¶¶ 4-6.) In June 2004, UAW withdrew the grievance. (Ex. 6 ¶ 1; Ex. 10.)

**8. Edwards' unsuccessful IEB appeal.** Edwards appealed UAW International Representative Browning's decision to withdraw the grievance to the UAW International Executive Board ("IEB"). Edwards complained that he had been a job-setter for "over 20 years and shouldn't have been disqualified nor harassed." He asserted that other transferees had not been required to take training, that he was "forced" to take training and tested because of his "advanced age" and "race" and that he was "disqualified unjustly." (Ex. 14.)

The IEB denied Edwards' appeal in June 2005. The IEB noted that other transferees were given training in their new Department 39 assignments, that none exhibited performance deficiencies that warranted specialized or additional training or disqualification, and that there was no evidence that the company's judgment about Edwards' performance was harassment or discriminatorily motivated by his age or race. The IEB concluded that Browning's decision was based on the facts and the rational conclusion that the union could not refute the company's

4

assessment that Edwards' performance was deficient or supplant the company's judgment that Edwards lacked necessary job qualifications. (Ex. 15.)

      **9. <u>Edwards' second unsuccessful lawsuit.</u>** Edwards again sued Ford and Visteon, and sued four individual managers, this time on May 4, 2004 in federal court [in the Eastern District of Michigan]. <u>Edwards v. The Ford Motor Co., et al.</u>, 04-CV-71670 ("<u>Edwards II</u>"). Edwards sued the companies for race discrimination under 42 U.S.C. § 1981 and the individuals for intentional infliction of emotional distress under Michigan law. These claims again challenged Edwards' disqualification as job-setter and "arose out of the same transaction and same facts that gave rise to the claims" asserted in Edwards' dismissed "state-court action." (Ex. 3 at 10, 13.) Judge Nancy G. Edmunds granted summary judgment for Ford and Visteon on March 16, 2005, finding that Edwards' claims were barred by the *res judicata* doctrine. Judge Edmunds also dismissed the claims against the individuals as being without merit. (Ex. 3 at 13, 14.)

      **10. <u>Edwards' unsuccessful PRB appeal.</u>** Edwards appealed the UAW IEB decision to the Public Review Board ("PRB"). The PRB is a body of "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." The PRB is created by the UAW Constitution and given authority "to make final and binding decisions on all cases appealed to it in accordance with Article 33." (Ex. 2.) Under Article 33, a UAW member "shall have the right . . . to appeal any action . . . by" the IEB and UAW national departments. (Ex. 2.)

      The PRB—seven law professors, chaired by Professor Theodore St. Antoine, former University of Michigan Law School dean—denied Edwards' appeal of January 4, 2006. The PRB concluded:

> This record does not support Edwards' claim that the Company discriminated against him because of his age and race. The record shows that the Company made every effort to train Edwards on his new assignment and that the Local 228 Representatives made certain that Edwards was given the opportunity to demonstrate his competence. Unfortunately, Edwards could not acquire the skills necessary to do the job in Department 39, so he was given a different assignment. The Company has the right and the responsibility to insist that employees are capable of performing the tasks assigned to them.

5

> . . . .
> Edwards' reassignment did not violate the
> collective bargaining agreement and the Ford
> Department Representative who investigated the
> grievance found no evidence of discrimination.
> Representative Browning's decision to withdraw
> the grievance was rational under these
> circumstances.
>
> (Ex. 5 at 4-5.)
>
> **11. <u>This lawsuit.</u>** On July 12, 2006, Edwards sued UAW and the PRB, filing his "Complaint for Damages and/or Other Equitable Relief; and/or for Enforcement of Collective Bargaining Agreement" in state court. The suit was removed to federal court as asserting claims subject to original jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In essence, Edwards complains that UAW breached the duty of fair representation by deciding not to arbitrate his disqualification as a job-setter. The suit alleges that it "arises as a result of a decision of the Public Review Board, International Union, UAW on January 4, 2006." (Compl. ¶ 3.) Count I ("Discrimination; Union Bias") and Count 2 ("Collusion With Management") complain about the PRB decision. Count 3 ("Specific Error of Fact; Breach of Contract") seems directed principally at the company (which is not a defendant); it alleges that "factual errors were made with regard to plaintiff's competency" and "procedures were used which singled out plaintiff for differential treatment." It also alleges that "the union breached its contract with plaintiff." (Compl. at 2-4.)

(Def. UAW's Mot., 1-7. <u>See</u> <u>also</u> Def. PRB's Mot., 1-6.)

### B. <u>PROCEDURAL HISTORY</u>

On July 12, 2006, Plaintiff filed his Complaint in Wayne County Circuit Court. On July 31, 2006, Defendants removed the case to this Court.

In January 2007, Defendant UAW filed its Motion for Summary Judgment. On the same day, Defendant PRB filed its Motion for Summary Judgment. In February 2007, Plaintiff filed a nearly identical Response to each motion. Defendant UAW filed a Reply. Defendant PRB did not file a Reply.

On February 16, 2007, Defendant UAW filed a Motion for Sanctions. On February 19,

2007, Defendant PRB filed a Motion for Sanctions.

The Court had originally scheduled a hearing for the two Motions for Summary Judgment and the two Motions for Sanctions. The hearing was scheduled for April 18, 2007. However, on April 9, 2007, the Court notified the parties that oral argument would not be heard and that the Court would decide the motions on the briefs. The Court also notified the parties that the Motions for Sanctions would be referred to Magistrate Judge Virginia Morgan.

## II.     DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Marrs v. Tuckey, 362 F. Supp. 2d 927, 934 (E.D. Mich. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Thus, the Sixth Circuit has explained that the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).

### B.     ANALYSIS

In response to Defendants' Motions for Summary Judgment, Plaintiff has filed a five-

7

paragraph document, which is barely one half-page in length. Plaintiff's Response—to Defendant UAW's motion—consists of a one-sentence argument against summary judgment. The sentence reads: "Pursuant to FRCP 56, this Motion for Summary Judgment is entirely inapplicable and is unsupported by any bases either in law, or in fact." (Pl.'s Resp. to Def. UAW's Mot., 2.) Plaintiff's Response—to Defendant PRB's motion—similarly consists of a one sentence argument against summary judgment. The sentence reads: "Pursuant to FRCP 56, this Motion for Summary Judgment is inapplicable, and whatever board [sic] immunity doctrine is being referenced, such theory is unsupported by law or fact." (Pl.'s Resp. to Def. PRB's Mot., 2.)

The Court is completely unimpressed by Plaintiff. Although the Court will overlook the fact that Plaintiff seems to be using a typewriter that has gone haywire, the Court cannot overlook the fact that Plaintiff has absolutely failed to generate any dispute as to the facts of this case. Instead of presenting an argument supported by facts and evidence, Plaintiff has filed conclusory and unsubstantiated Responses, which provide no meaningful insight into the matter at hand. Unlike Defendants, Plaintiff does not cite to any evidence, case law, or exhibits. Moreover, Defendant PRB states—and Plaintiff does not contest—that Plaintiff has conducted no discovery in this case, and the discovery cut-off deadline has already passed. (Def. PRB's Mot. for Sanctions, 3, 8.) As such, the Court finds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. Therefore, the Court will grant summary judgment in favor of Defendants. Accordingly,

IT IS ORDERED that Defendant UAW's Motion for Summary Judgment is granted.

IT IS ORDERED that Defendant PRB's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that sanctions be imposed against Plaintiff. The matter of sanctions shall be referred to the Magistrate Judge.

                s/Bernard A. Friedman
                BERNARD A. FRIEDMAN
                CHIEF UNITED STATES DISTRICT JUDGE

Dated: June 12, 2007
       Detroit, Michigan

I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.

      /s/ Patricia Foster Hommel
        Patricia Foster Hommel
     Secretary to Chief Judge Friedman